

**MICHELLE M. HARNER**
**U.S. BANKRUPTCY JUDGE**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Jacqueline Chorba, | * | Case No. 17-16032-MMH |
| | * | |
| Debtor. | * | Chapter 13 |
| | * | |
| * * * * * * | * | * * * * * * |
| | * | |
| Jacqueline Chorba, | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | Adv. No. 17-00380-MMH |
| | * | |
| Quantum3 Group LLC, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |
| * * * * * * | * | * * * * * * |

## <u>MEMORANDUM OPINION</u>

A creditor holding a right to payment under applicable nonbankruptcy law generally may

file a proof claim in a debtor's bankruptcy case under section 501 of the U.S. Bankruptcy Code.[1]

The U.S. Supreme Court recently explained that a creditor might file such a proof of claim even

if the claim underlying the right to payment is time barred under applicable nonbankruptcy law.

*See Midland Funding, LLC v. Johnson*, 137 S.Ct. 1407, 1412 (2017). As the Supreme Court

observed in *Midland Funding*, the Code does not limit the definition of claim in section 101(5) to

---

[1] 11 U.S.C. §§ 101, et seq. (the "Code").

an enforceable claim, and it specifically recognizes that an unenforceable claim may be disallowed in accordance with section 502. *Id*. The Supreme Court's decision in *Midland Funding* underscores the stark distinction in the Code between the filing of a proof of claim and the ultimate allowance of that claim in the debtor's bankruptcy case.

Before the Court in this adversary proceeding is a Motion to Dismiss that requires the Court to analyze several of the principles articulated by the Supreme Court in *Midland Funding*.[2] Specifically, Jacqueline Chorba, the above-captioned debtor and the plaintiff in this adversary proceeding (the "Plaintiff"), alleges that Quantum3 Group, LLC and MOMA Funding, LLC (collectively, the "Defendants") are unlicensed debt collectors under the Maryland Collection Agency Licensing Act and that, as such, the Defendants' proofs of claim in this chapter 13 case violate the Maryland Consumer Debt Collection Act and the Maryland Consumer Protection Act. By her Amended Complaint, the Plaintiff seeks damages, attorney's fees, and disallowance of the Defendants' proofs of claim. The Defendants, on the other hand, assert that the Plaintiff's Amended Complaint is barred by her confirmed chapter 13 plan and the doctrine of res judicata or that, alternatively, their proofs of claim are permissible under *Midland Funding* and that the Plaintiff's state law claims are preempted by the Code. Under either argument, the Defendants posit that the Plaintiff has failed to state a claim upon which relief can be granted and, thus, request dismissal of the Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), as made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012.

The Defendants' proofs of claim are based on defaulted debt purchased from Synchrony Bank. At the time of plan confirmation in this case, no party had objected to the Defendants'

---

[2] As explained below, these issues also implicate several aspects of the decision of the U.S. Court of Appeals for the Fourth Circuit in *Dubois v. Atlas Acquisitions LLC (In re Dubois)*, 834 F.3d 522 (4th Cir. 2016).

proofs of claim. The confirmation of the chapter 13 plan was not, however, an adjudication of the claims on the merits. As several courts have noted, the plan confirmation process and the claims allowance process serve two different functions in a bankruptcy case and one does not necessarily foreclose the other. The Court thus finds no basis to bar the Plaintiff's claims under the doctrine of res judicata. Moreover, under *Midland Funding* and as further explained below, the Defendants' proofs of claim, based on their right to payment on the purchased debt, can stand, subject to the claims allowance process. In that process, the Plaintiff may challenge the claims, as she has done in Count III of the Amended Complaint. To the extent the claims are unenforceable under Maryland law, they are subject to disallowance under section 502(b) of the Code. Nevertheless, under relevant case law, the claims asserted in Counts I and II of the Amended Complaint alleging that the Defendants violated Maryland law by filing their proofs of claim are preempted by the Code. Accordingly, the Court will enter an Order granting in part, and denying in part, the Defendants' Motion to Dismiss.

### I.   Relevant Background

The Plaintiff filed for protection under chapter 13 of the Code on March 1, 2017. She simultaneously filed her chapter 13 plan, which the Court confirmed on October 17, 2017. No party objected to the Plaintiff's plan. That plan provides, among other things, that general unsecured creditors "will be paid pro rata" and that "[t]he amount of each claim to be paid under the plan will be established by the creditor's proof of claim or superseding Court order." ECF 2, Case No. 17-16032, ¶¶ 2(f), 3.

The Defendants filed two proofs of claim in the Plaintiff's chapter 13 case in June 2017. The first claim is filed as Claim No. 5 in the amount of $3,442.39. The second claim is filed as

Claim No. 6 in the amount of $1,530.08 (collectively with Claim No. 5, the "Proofs of Claim"). The Proofs of Claim reflect the defaulted debt purchased from Synchrony Bank.

On October 9, 2017, the Plaintiff commenced this adversary proceeding by filing a two-count Complaint against the Defendants (the "Original Complaint"). Count I of the Original Complaint alleges that the Defendants violated the Maryland Consumer Debt Collection Act (the "Debt Collection Act")[3] by filing the Proofs of Claim because the Defendants are unlicensed debt collectors under the Maryland Collection Agency Licensing Act (the "Licensing Act").[4] Count II of the Original Complaint alleges that such conduct is a per se violation of the Maryland Consumer Protection Act (the "Consumer Protection Act").[5] Both counts seek compensatory and punitive damages and attorney's fees. The Defendants filed a Motion to Dismiss the Original Complaint on November 3, 2017. The Plaintiff then filed an Amended Complaint against the Defendants (the "Amended Complaint"), making minor changes to the first two counts described above and adding Count III, which asserts an objection to, and seeks disallowance of, the Proofs of Claim. The Defendants thereafter filed a Motion to Dismiss the Amended Complaint (the "Motion to Dismiss"), and the Plaintiff filed a response thereto.[6]

The Court held a hearing on the Motion to Dismiss and the related pleadings on January 17, 2018. This Memorandum Opinion summarizes the Court's findings of fact and conclusions of law with respect to the Motion to Dismiss.

---

[3] MD. CODE ANN., COM. LAW §§ 14-201 et seq.

[4] MD. CODE ANN., BUS. REG. §§ 7-301 et seq.

[5] MD. CODE ANN., COM. LAW §§ 13-301 et seq.

[6] The Defendants filed a Motion to Strike [ECF 17], objecting to the untimeliness of the Plaintiff's response to the Motion to Dismiss. The Plaintiff's counsel explained the circumstances surrounding the late filing in the Plaintiff's opposition paper [ECF 21] and at the January 17, 2018, hearing on the Motion to Dismiss. For the reasons stated on the record at said hearing, and in accordance with Bankruptcy Rule 9006(b)(1), the Court allowed the Plaintiff's late-filed response. *See also Colleton Preparatory Acad., Inc. v. Hoover Universal Inc.*, 616 F.3d 413, 417 n. 3 (4th Cir. 2010) (explaining the sound "longstanding policy in favor of merits-based adjudication"). The Court will enter a separate Order denying the Defendants' Motion to Strike.

## II.    Jurisdiction and Legal Standards

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Local Rule 402 of the United States District Court for the District of Maryland. This proceeding is a "core proceeding" under 28 U.S.C. § 157(b)(2).

Civil Rule 12(b) permits the filing of a motion to assert certain defenses, including that the complaint "fails to state a claim upon which relief may be granted." Fed. R. Civ. R. 12(b)(6). A motion to dismiss under Civil Rule 12(b)(6) "tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; 'it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Hall v. Greystar Management Servs., L.P.*, 637 Fed. Appx. 93, 99 (4th Cir. 2016) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). The Court must "accept the well-pled allegations of the complaint as true, and we construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss under Civil Rule 12(b)(6), the complaint must plead facts that surpass speculation and "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Section 501 of the Code provides, in pertinent part, that "[a] creditor or an indenture trustee may file a proof of claim." 11 U.S.C. § 501(a). That claim is deemed allowed in the bankruptcy case, unless the trustee or a party in interest objects to the claim. *See* 11 U.S.C. § 502(a). If an objection is filed, section 502(b) of the Code requires the Court to determine the amount of the claim and to disallow the claim under certain circumstances, including to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any

agreement or applicable law for a reason other than because such claim is contingent or unmatured;…." 11 U.S.C. § 502(b)(1).

### III.    Analysis

The Amended Complaint basically argues that the Defendants' act of filing the Proofs of Claim constitutes an act to collect a debt or enforce a right in violation of state law.[7] It also seeks to disallow the Proofs of Claim in their entirety. The state law at issue involves the collection of consumer debt in the state of Maryland. The Licensing Act requires "collection agencies" doing business in Maryland to comply with certain licensing requirements.[8] MD. CODE ANN., BUS. REG. § 7-301(a) ("a person must have a license whenever the person does business as a collection agency in the State"). The Debt Collection Act prohibits various conduct, including collection activities that "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." MD. CODE ANN., COM. LAW § 14-202. A violation of the Debt Collection Act is, in turn, a per se violation of the Consumer Protection Act. *See* MD. CODE ANN., COM. LAW § 13-301(14)(iii). Maryland courts have determined that "a consumer who has been sued by an unlicensed debt collector may seek damages under the Consumer Debt Collection Act and the Consumer Protection Act." *Ramsay v. Sawyer Prop. Mgmt. of Maryland, LLC*, 2016 WL 6583892, at *8 (Md. Ct. Spec. App. Nov. 4, 2016) (citations omitted).

The Defendants do not contend they are licensed debt collectors under Maryland law. Rather, they argue that the Plaintiff cannot bring the state law claims because of two separate legal doctrines—i.e., res judicata and preemption. The Court addresses each of the Defendants'

---

[7] The Fourth Circuit has explained that "[p]recedent and common sense dictate that filing a proof of claim is an attempt to collect a debt." *Dubois*, 834 F.3d at 527.

[8] The Licensing Act defines a "collection agency" as a "person who engages directly or indirectly in the business of: ... (ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it." MD. CODE ANN., BUS. REG. § 7–101(c).

arguments in support of the Motion to Dismiss below. Although the Court finds that the Plaintiff should be able to challenge the enforceability of the Defendants' claims, the Supreme Court's decision in *Midland Funding* acknowledges the Defendants' right to file the Proofs of Claim to the extent based on a right to payment. *See Midland Funding*, 137 S.Ct. at 1412. *See also infra* Part III.B. The Court thus will dismiss only Counts I and II of the Amended Complaint.

### A.    Plan Confirmation and the Doctrine of Res Judicata

The Defendants argue that the claims asserted in the Amended Complaint are barred by the Plaintiff's confirmed chapter 13 plan and the doctrine of res judicata. The Fourth Circuit has explained that "[t]he doctrine of res judicata encompasses two concepts: 1) claim preclusion and 2) issue preclusion." *Orca Yachts, L.L.C. v. Mollicam, Inc*., 287 F.3d 316, 318 (4th Cir. 2002) (citing *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996)). The doctrine requires a final judgment on the merits, entered in a prior action between the same parties or their privies, and involving the same causes of action. *See, e.g., LVNV Funding, LLC v. Harling*, 852 F.3d 367, 371 (4th Cir. 2017) (citing *Covert v. LVNV Funding, LLC,* 779 F.3d 242, 246 (4th Cir. 2015)). "A judgment satisfying those three factors is both 'claim' and 'issue' preclusive." *Harling*, 852 F.3d at 371 (citations omitted).

The Fourth Circuit has recognized that the doctrine of res judicata applies to bankruptcy judgments. *See, e.g., Grausz v. Englander*, 321 F.3d 467, 472 (4th Cir. 2003). Nevertheless, the Fourth Circuit refused to apply the doctrine in a case factually similar to this adversary proceeding. *See Harling*, 852 F.3d 367. In *Harling*, chapter 13 debtors filed objections to a creditor's proofs of claim after plan confirmation. The creditor argued that res judicata barred the debtors' objections. In rejecting the creditor's argument, the Fourth Circuit discussed the differences between the chapter 13 plan confirmation process and the bankruptcy claims

allowance process. The Fourth Circuit concluded that "[t]here is no 'prior judgment,' final or otherwise, 'on the merits' as to any individual unsecured creditor's claims in the Confirmation Orders." *Id.* at 374. *See also In re Haskins*, 563 B.R. 177 (Bankr. W.D. Va. 2017) (reaching the same decision on similar facts).

The Defendants rely on the Fourth Circuit's decision in *Covert* to support their position on res judicata. *See Covert v. LVNV Funding, LLC,* 779 F.3d at 250. The facts of *Covert* are, however, inapposite to the facts of this adversary proceeding. In fact, the Fourth Circuit distinguished *Covert* from the chapter 13 cases before it in *Harling*, explaining that "the *Covert* plaintiffs raised outside of the bankruptcy court a defense to LVNV's proof of claim—a defense that could and should have been asserted through the claims-allowance process under § 502, but also an asset that should have been included as part of the plaintiffs' bankruptcy estates." *Harling*, 852 F.3d at 375. *See also Haskins*, 563 B.R. at 189–190 (also distinguishing *Covert*).

The Court finds that the Fourth Circuit's holding in *Harling* is directly applicable to the facts of this adversary proceeding. The Plaintiff's chapter 13 plan was filed on Local Form M, which addresses distributions to general unsecured creditors in a collective manner and does not assign individual values to, or allow, any particular unsecured claims. Rather, the focus of the Plaintiff's chapter 13 plan and the Court's confirmation order is the plan's compliance with sections 1322 and 1325 of the Code. 11 U.S.C. §§ 1322, 1325. The confirmation order did not adjudicate anything beyond that specific issue; it did not address the allowance of the Defendants' claims, on the merits or otherwise. Sections 501 and 502 of the Code and the bankruptcy claims process determine the allowance of the Defendants' claims. 11 U.S.C. §§ 501,

502.[9] Accordingly, the Court finds that the confirmation of the Plaintiff's chapter 13 plan does not bar the claims asserted in the Amended Complaint or this adversary proceeding.

### B.   The Proofs of Claim and *Midland Funding*

The Defendants also argue that the Plaintiff's claims in the Amended Complaint are contrary to the Supreme Court's decision in *Midland Funding* and preempted by the Code. The Court generally agrees with these basic assertions, but the Court does not reach the same conclusion as the Defendants regarding their application to this adversary proceeding. The pertinent facts of *Midland Funding* are analogous to the facts before the Court, and consequently, the Defendants have a right, based on their prepetition right to payment, to file the Proofs of Claim. *Midland Funding* does not, however, impede the Plaintiff's ability to object to the Proofs of Claim on any applicable grounds, including unenforceability under section 502(b) of the Code. *Midland Funding*, 137 S.Ct. at 1412. The Supreme Court's decision in *Midland Funding* also suggests that the Plaintiff's claims for violations of state law premised on the filing of the Proofs of Claim are not sustainable.[10] *Id.* at 1414. If the Defendants have the right to file such

---

[9] The Defendants suggest that the addition of a claims objection to the Amended Complaint make this adversary proceeding more like the facts of *Covert*. As discussed herein, the Court finds that the Amended Complaint invokes the precise bankruptcy process described by the Fourth Circuit in *Harling*. The Plaintiff has asserted a claims objection during the bankruptcy case. This is very different from *Covert*, which involved, among other things, debtors attempting to assert objections to claims (i) after confirmation of a chapter 13 plan (and after payments to creditors under that plan) and (ii) in a separate civil action filed the district court five years after the bankruptcy filing, outside of the bankruptcy claims allowance process. The Court finds no merit to the Defendants' position in the Motion to Dismiss that the Plaintiff's objections to the Proofs of Claim are impermissible and not independent causes of action, or that the date of the filing of Count III affects the Plaintiff's ability to pursue it. *See, e.g.,* Fed. R. Bankr. P. 3007(a); *In re Haraldson*, 2009 WL 349827, at *2 (Bankr. S.D. Tex. Feb. 11, 2009) (allowing objection to claim long after chapter 13 plan confirmation and explaining that "[n]either the Bankruptcy Code nor the Bankruptcy Rules specify the time for filing an objection to a claim"). *See also, e.g.,* Fed. R. Bankr. P. 3007(b) (noting that an objection to a claim may be included in an adversary proceeding); *In re Salazar*, 2011 WL 1237648, at *6 (Bankr. D. Md. Mar. 30, 2011) ("To be sure, Plaintiffs could have filed an objection to claim asserting their recoupment defense and a separate adversary proceeding seeking additional relief. But such duplicative proceedings are unnecessary in light of Rule 3007.").

[10] *Midland Funding* involved federal and not state law, in that the Supreme Court was called upon to consider the interplay of the Code and the Fair Debt Collection Practices Act. In analyzing these two statutes, the Supreme Court concluded that "filing (in a Chapter 13 bankruptcy proceeding) a proof of claim that is obviously time barred is not a false, deceptive, misleading, unfair, or unconscionable debt collection practice within the meaning of the Fair Debt Collection Practices Act." *Id.* at 1415–1416. The Supreme Court did not address the issue of repeal of one federal

claims under federal law, that conduct may not fall within the parameters of the applicable state law or such state law claims may be preempted by the Code. *See supra* note 10. The Court addresses the latter issue further in Part III.C below.

In *Midland Funding*, the Supreme Court had to determine, among other things, the effect of a creditor filing a proof of claim when the underlying claim was time barred by applicable nonbankruptcy law. The debtor in that case had successfully objected to the creditor's proof of claim in her bankruptcy case because the claim was barred by the six-year statute of limitations under applicable state law. *Id*. at 1411. The debtor subsequently filed a lawsuit against the creditor in district court alleging that the filing of the proof of claim by the creditor constituted false, deceptive, misleading, unconscionable, or unfair conduct within the meaning of the Fair Debt Collection Practices Act. *Id.* The Supreme Court held that the creditor's conduct did not violate the Fair Debt Collection Practices Act, in part, because the creditor held a claim under section 101(5) of the Code, which could be asserted through a proof of claim in the bankruptcy case. *Id*. at 1411–1412.

In reaching its conclusion in *Midland Funding*, the Supreme Court analyzed the definition of "claim" in section 101(5) of the Code and the nature of the claims allowance process in a bankruptcy case. The Supreme Court determined that the creditor's time-barred claim fell within the Code's definition of claim because, among other things, the applicable state law "provides that a creditor has the right to payment of a debt even after the limitations period has expired." *Id*. at 1411. Although such a claim may be unenforceable against a debtor, the Supreme Court noted that section 502(b)(1) specifically contemplates the disallowance of

---

law by the other, and preemption was not applicable to the facts of that case. Here, an argument may exist that the exercise of a right under the Code does not violate the Debt Collection Act, in that the creditor does have a right to file a proof of claim for a right to payment. *See* MD. CODE ANN., COM. LAW § 14-202 (prohibiting, among other things, acts to enforce a right *that does not exist*). Nevertheless, the parties did not raise this issue in the Motion to Dismiss or the response. Accordingly, the Court addresses the preemption doctrine in Part III.C below.

unenforceable claims, and it characterized the time-barred nature of the claim as an affirmative defense that could be raised in that context. *Id.* at 1412. The Supreme Court opined that the "features of a Chapter 13 bankruptcy proceeding make it considerably more likely that an effort to collect upon a stale claim in bankruptcy will be met with resistance, objection, and disallowance."[11] *Id.* at 1413–1414.

The Licensing Act requires collection agencies doing business in Maryland to obtain an appropriate license. MD. CODE ANN., BUS. REG. § 7-301(a). The Licensing Act itself does not provide a private cause of action for noncompliance.[12] Rather, that right might exist under the Debt Collection Act and the Consumer Protection Act. MD. CODE ANN., COM. LAW §§ 13-301(14)(iii), 14-202. Moreover, courts must determine the consequences of a legal action brought by an unlicensed debt collector.

The few Maryland courts that have addressed these issues describe the licensing requirement as "an integral part of a collection agency's status as a claimant in Maryland." *Finch v. LVNV Funding, LLC*, 71 A.3d 193, 201 (Md. Ct. Spec. App. 2013) ("*Finch I*"), *cert. denied*, 435 Md. 266 (Md. 2013);[13] *Ramsay v. Sawyer Prop. Mgmt. of Md.*, *LLC*, 2016 WL 6583892 (Md. Ct. Spec. App. Nov. 4, 2016). Thus, for example, the court in *Finch I* held that a default judgment obtained by an unlicensed debt collector in a state court action was void and subject to

---

[11] The Court recognizes that the dissent in *Midland Funding* raised concerns regarding reliance on the structural features of the chapter 13 process. *Id*. at 1420–1421 (J. Sotomayor, dissenting). Nevertheless, the Court finds the Supreme Court's discussion in *Midland Funding* regarding a creditor's right to file a proof of claim under the Code for a right to payment under applicable nonbankruptcy law directly applicable to this adversary proceeding. *Id.* at 1412. That basic principle also is set forth by the Fourth Circuit in *Dubois*. 834 F.3d at 529–530.

[12] The Licensing Act does provide criminal penalties for violations of the Act. MD. CODE ANN., BUS. REG. § 7-401(b).

[13] The defendant in *Finch* appealed the ultimate jury verdict in that case and also argued that the state appellate court should revisit its holding in *Finch I* because of subsequent legal developments. *See LNVN Funding, Inc. v. Finch*, 2017 WL 6388959, at *9 (Md. Ct. Spec. App. Dec. 14, 2017) ("*Finch II*") ("LVNV argues that this Court should revisit our decision in *Finch I*, basing its assertion on our reliance, in part, on the rationale of an Illinois appellate court's opinion on a similar issue as persuasive authority—a decision that was later overruled by the Illinois Supreme Court."). The state court declined to revisit this aspect of *Finch I*. At the Hearing, the Defendants suggested that this issue may remain unsettled, perhaps pending appeal.

collateral attack by the debtor. *Finch I*, 71 A.3d at 202. Similarly, the court in *Ramsay* stated that "[a]n unlicensed collection agency may not file an action to enforce a right related to its unlicensed activities." *Ramsay*, 2016 WL 6583892, at *7. The question for this Court is whether an unlicensed debt collector's inability to file a legal action against a debtor under Maryland law is akin to the time-barred claim addressed by the Supreme Court in *Midland Funding*. Although the two statutory provisions and their treatment by courts differ somewhat,[14] the Court concludes that both speak to the enforceability of a claim—an issue directly addressed by the Supreme Court in *Midland Funding*.

The Licensing Act reads, "Except as otherwise provided in this title, a person must have a license whenever the person does business as a collection agency in the State." MD. CODE ANN., BUS. REG. § 7-301(a). Section 7-401(a) of the Licensing Act, in turn, prohibits a person from knowingly and willfully doing business as a collection agency in Maryland without a license. *Id.* at § 7-401(a). The term "collection agency" under the Act "means a person who engages directly or indirectly in the business of" collecting (or soliciting for collection) consumer claims. MD. CODE ANN., BUS. REG. § 7-101(d).

Notably, for purposes of this bankruptcy case, the Licensing Act does not address the validity or effect of contracts or assignment agreements between a debt collector and a debt seller or assignor, whether for the purchase of defaulted debt or otherwise.[15] *See* MD. CODE ANN., BUS. REG. § 7-301(a). It likewise does not speak to the validity of the debt itself, or the debtor's liability on the debt, which gives rise to a right to payment. *See id*. In fact, the state

---

[14] For example, the court in *Finch I* suggests that the Maryland licensing requirement is something more than an affirmative defense. *Finch I*, 71 A.3d at 198–201. The court explained that "[t]he *McDaniel* Court held that the lack of a license was not merely an affirmative defense because licensure is an integral part of the landlord's status as a claimant in Maryland." *Id.* at 201 (citing *McDaniel v. Baranowski*, 19 A.3d 927 (Md. 2011)).

[15] The Licensing Act also applies only to "business" done "in the State" and presumably would not affect contracts and transactions consummated outside of the state. That said, the Court is mindful that at least one court has determined that the Licensing Act does "not unreasonably burden interstate commerce." *Hauk v. LVNV Funding, Inc.*, 749 F. Supp.2d 358, 363 (D. Md. 2010).

court in *Finch II* stated that neither its holding in *Finch I* nor the Licensing Act invalidated the debtor's liability on the debt. *See Finch* II, 2017 WL 6388959, at *17 (explaining that the court's "holding in *Finch I* did not render void the underlying liability for the debts"). As such, based on the record before the Court, the Defendants' failure to obtain a license in accordance with the Licensing Act does not invalidate their agreement with Synchrony Bank or their right to payment against the Plaintiff. The Defendants may not be able to enforce their agreement with Synchrony Bank or their right to payment against the Plaintiff in a Maryland court because they are not licensed to do business as a collection agency in Maryland. That inability to enforce their rights, however, goes to the allowance of their underlying claim, and not their ability to file a claim, at least in the bankruptcy context.

The bankruptcy court in *Scheible v. Quantum3 Group, LLC*, reached a similar conclusion with respect to a licensing requirement for debt collectors under Indiana law. 2015 WL 6828753, at *6 (Bankr. S.D. Ind. Nov. 6, 2015). The court explained, "The 'Bankruptcy Code specifies comprehensive and detailed procedures for the filing and consideration of creditors' claims and disputes over claims,' but it does not 'contain a limitation on a creditor's right to file a proof of claim, aside from the fact that the creditor have the capacity to sue and be sued.'" *Id.* (quoting *Townsend v. Quantum3 Group, LLC*, 535 B.R. 415, 429 (M.D. Fla. 2015)). The courts in both *Scheible* and *Townsend* concluded that "a creditor need not be licensed under applicable state law to file a proof of claim in the debtor's bankruptcy proceeding." *Scheible*, 2015 WL 6828753, at *6 (citing *Townsend*, 535 B.R. at 431). These decisions are consistent with the Supreme Court's discussion in *Midland Funding* of a creditor's ability to file proof of claim for rights of payment, subject to the claims allowance process.

Accordingly, the Court finds that, to the extent the Defendants possess a right to payment against the Plaintiff under the applicable agreement and nonbankruptcy law, the Defendants had the right to file the Proofs of Claim, subject to any objections raised through the claims allowance process in the Plaintiff's chapter 13 case.[16] The Court further finds that, to the extent the Defendants had a right to file the Proofs of Claim, the Plaintiff's objections to those claims in Count III of the Amended Complaint are sufficiently pled, appropriate, and timely.[17] The Motion to Dismiss as to Count III is denied.

### C.    Preemption and State Consumer Laws

The Defendants argue that the Plaintiff's claims in Counts I and II based on the Debt Collection Act and Consumer Protection Act are preempted by the Code. This argument is grounded in the implied preemption doctrine and an alleged conflict between the Code and Maryland law.[18] Courts have generally recognized that at least certain aspects of state consumer

---

[16] The Plaintiff did not specifically challenge the Defendants' right to payment on the debts underlying the Proofs of Claim. The Amended Complaint asserts a general objection based on the Defendants being unlicensed debt collectors under Maryland law, which may be sufficient to satisfy the Plaintiff's burden on the claims objection given the minimal supporting documentation attached to the Proofs of Claim. *See, e.g., Xinergy Ltd. v. Meral, Inc. (In re Xinergy Ltd.)*, 2016 WL 551675, at *4 (Bankr. W.D. Va. Feb. 3, 2016) ("Although a lack of documentation required by Rule 3001, in and of itself, is not a basis for disallowance of a claim in the Fourth Circuit, the claimant loses the prima facie presumption of validity and amount.") (citing, among others, *In re Andrews*, 394 B.R. 384, 389 (Bankr. E.D. N.C. 2008); *In re Herron*, 381 BR. 184, 190 (Bankr. D. Md. 2008)). In addition, the Court observes that the definition of claim includes a right to payment, "whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(a)(5). Because of the foregoing, the Court does not address the potential consequences of the Defendants failing to have a right to payment under applicable nonbankruptcy law. Given the broad definition of claim under the Code, any such determination may turn on, among other things, the facts of the particular case and the elements of the applicable nonbankruptcy law. That issue is not before the Court and is not addressed by this Memorandum Opinion or the related Order.

[17] The Code does not set a deadline for filing objections to proofs of claim in a chapter 13 case, and the Court did not establish such a deadline in this particular case. *See, e.g.*, Fed. R. Bankr. P. 3007(a); *Haraldson*, 2009 WL 349827.

[18] The Defendants' preemption argument stems from the Supremacy Clause and the Bankruptcy Clause of the U.S. Constitution. U.S. CONST. art. I, § 8, cl. 4 (the Bankruptcy Clause); art. VI, cl. 2 (the Supremacy Clause). In general, preemption is based on Congressional intent and can be either express or implied. The Defendants do not argue express preemption here, as the Code does not expressly preempt the kind of state law at issue in this adversary proceeding. With respect to implied preemption, the Fourth Circuit has recognized both field preemption and conflict preemption. *Worm v. Am. Cyanamid Co.*, 970 F.2d 1301 (4th Cir. 1992). As the Fourth Circuit explained in *Worm*, "even absent an express or implied congressional intent to preempt state authority in a field, state law is nevertheless preempted by operation of law to the extent that it actually conflicts with federal law." *Id.* at 1304.

protection laws can co-exist with the Code and are not preempted. *See, e.g., Winter v. Suddenlink (In re Winter)*, 2015 WL 5063953, at \*2 (Bankr. E.D. N.C. Aug. 26, 2015) (collecting cases holding same). Some courts have, however, deviated from this general proposition, particularly where the alleged violation of state law is based on the exercise of a right under the Code. *See, e.g., Guenot v. Candica LLC (In re Guenot)*, 2014 WL 67320 (Bankr. D. N.J. Jan. 2, 2014); *Keeler v. PRA Receivables Management, LLC (In re Keeler)*, 440 B.R. 354 (Bankr. E.D. Pa. 2009); *Johnston v. Telecheck Servs., Inc. (In re Johnston)*, 362 B.R. 730 (Bankr. N.D. W. Va. 2007). *See also Larkin v. Bank of Am., N.A. (In re Larkin)*, 553 B.R. 428 (Bankr. D. Kan. 2016).

"To determine whether a state law is conflict preempted by federal law, the Fourth Circuit has stated that courts should resolve whether it is impossible to comply with both the state and federal law or whether the state law presents an obstacle to the accomplishment of the purposes of the federal law." *Barnhill v. Firstpoint, Inc*., 2017 WL 2178439, at \*4 (M.D. N.C. May 17, 2017). In this adversary, to the extent that the Defendants possess a right to payment and thus have a right under the Code to file the Proofs of Claim, that conduct cannot form the basis of liability under state law. A state law that penalizes a party for exercising a right under the Code, or otherwise makes it impossible for that party to exercise such right and comply with applicable state law, is squarely within conflict preemption. *See, e.g., Keeler*, 440 B.R. at 367 ("To the extent that Pennsylvania law would render the filing of a proof of claim by Portfolio (or its agent) actionable, state law is preempted by the congressional decision to authorize such claims to be filed."); *Guenot*, 2014 WL 67320, at \*2 (finding that "when the allegations in a complaint are based on violations of the Bankruptcy Code, … the Bankruptcy Code preempts" applicable state law). As such, the Court finds that the Plaintiff's claims set forth in Counts I and II of the Amended Complaint are preempted by the Code. *See also supra* note 10

(referencing *Midland Funding* and explaining that even if not preempted, the Defendants'
conduct may not violate the Debt Collection Act).

### IV.    Conclusion

For the reasons set forth above, the Court determines that (i) the Plaintiff's claims in the
Amended Complaint are not barred by her confirmed chapter 13 plan and the doctrine of res
judicata; (ii) the Defendants have the right to file the Proofs of Claim to the extent those claims
are based on a right to payment under the applicable agreement and state law; and (iii) the
Plaintiff's claims in Counts I and II are preempted by the Code to the extent that the Defendants
possess a right to payment and, in turn, had the right to file the Proofs of Claim.[19] Accordingly,
the Court will dismiss only Counts I and II of the Amended Complaint. The Court will enter a
separate order granting in part, and denying in part, the Motion to Dismiss, consistent with the
terms of this Memorandum Opinion.

cc:    Plaintiff
       Plaintiff's Counsel
       Defendants' Counsel


### END OF MEMORANDUM OPINION


---

[19] Because the Court is dismissing Counts I and II, it does not address herein the Defendants' allegations in the
Motion to Dismiss that the Plaintiff failed to adequately plead those claims or the resulting damages in accordance
with the standards set forth in *Iqbal*, 556 U.S. 662, and *Twombly*, 550 U.S. 544.